IN RE COMMITMENT OF WELLS.
STATE OF NEBRASKA, APPELLEE, v. KENNETH CLARK WELLS, APPELLANT.
249 N. W. 2d 904

Filed February 9, 1977. No. 40624.

T. Clement Gaughan and Richard L. Goos, for appellant.

Ronald D. Lahners and Roger W. Hirsch, for appellee.

Heard before SPENCER, BOSLAUGH, and CLINTON, JJ., and HAMILTON and WINDRUM, District Judges.

SPENCER, J.

This is an appeal from a determination on an annual review that petitioner, Kenneth Clark Wells, is still a sexual sociopath. Petitioner asserts seven assignments

of error. They are essentially embraced in the following: (1) Petitioner's commitment was void; (2) petitioner's commitment was a voluntary commitment, terminable by him at will; and (3) the court erred in not permitting petitioner to be personally present in court on the hearing and argument on his motion for a new trial. We affirm.

In July 1973, petitioner-appellant was charged with the felony offenses of sodomy and assault with intent to commit sodomy. Following a preliminary hearing, defendant was bound over to District Court. Petitioner was never brought to trial because on October 9, 1973, Wells filed a petition under section 29-2909, R. R. S. 1943, stating he believed himself to be a sexual sociopath in need of treatment and requesting commitment to the Nebraska Regional Center. On October 11, 1973, the county attorney also filed a motion requesting a hearing on whether defendant was a sexual sociopath. Two psychiatrists were appointed by the Court to examine defendant. Both reported he was a sexual sociopath.

At a hearing on November 21, 1973, petitioner stipulated to a 1953 rape conviction in Lancaster County. The court ordered petitioner temporarily committed to the Lincoln Regional Center for further examination. The examining psychiatrist reported defendant was a sexual sociopath but that he would not benefit from treatment at the Lincoln Regional Center. He recommended defendant be sent to the Nebraska Penal and Correctional Complex.

The report of the psychiatrist contained a history of the defendant. It revealed defendant received a 12-year sentence on the 1953 rape conviction. He was in the Nebraska Penal Complex from 1953 to April 1959. During the time of his incarceration he made one escape. In July of 1959, 2 months after his release, he was charged with molesting a young girl. In September of 1959, he was sent to the Norfolk Regional

Center as a sexual psychopath. He was transferred to the Lincoln Regional Center where he was a patient from November 1959, until April of 1961, when he was returned to the Nebraska Penal Complex. In June of 1965, he was incarcerated at the Penal Complex on a charge of forgery. He was paroled in June of 1970. In December of 1970, and January of 1971, there were several incidents of breaking and entering and rapes in the Kansas area where he lived, and he was then returned to the Nebraska Penal Complex. He was released sometime in 1971, and was incarcerated again in 1972 for an insufficient fund check charge. He was released from the Penal Complex May 1, 1973. The offenses preceding his incarceration as a sexual sociopath occurred 2 months later, in July of 1973.

The first question raised by several of petitioner's assignments of error is whether or not he can attack the original commitment proceedings at this time. Section 29-2906(1), R. R. S. 1943, provides, so far as material herein: "Whenever a defendant has been adjudicated a sexual sociopath and committed for an indefinite period to either the Nebraska Penal and Correctional Complex or a state regional center for treatment of the mentally ill, he may appeal such commitment directly to the Supreme Court." Petitioner's commitment to the Penal Complex was a final order. Section 25-1912, R. R. S. 1943, requires that an appeal from a final order be taken within 1 month. · State v. Williams, 194 Neb. 483, 233 N. W. 2d 772 (1975).

Petitioner's attempt to attack the original commitment at the annual review hearing was a collateral attack which the District Court properly declined to hear. While the court retains jurisdiction of the petitioner so long as he remains committed, that retention is not for the purpose of reexamination of the original commitment but rather for periodic reviews to determine if petitioner is still a sexual sociopath.

Petitioner's next contention is that as he instituted

the initial proceedings, it was a voluntary commitment and he should have the right to terminate it at will. At the outset, we observe that the commitment was not one for treatment but rather a commitment for being a sexual sociopath. The fact that petitioner initiated the proceedings does not change the nature of the commitment. At the time the proceedings were initiated, Wells was before the District Court on two sex-related felony charges. The county attorney joined in the sexual sociopath proceedings rather than proceeding with the criminal prosecutions.

Nebraska is one of the few states in the Union which provides for a voluntary proceedings. Section 29-2909, R. R. S. 1943, is as follows: "Any person whether or not he is guilty of a sexual offense who believes himself to be a sexual sociopath may initiate proceedings under sections 29-2901 to 29-2910 by filing a petition in the district court of any county alleging that he believes himself to be a sexual sociopath. The judge of such court shall thereupon order such person to be examined by two psychiatrists in the manner provided by section 29-2902 and thereafter proceedings shall be held in the same manner as if such person had committed a sex offense except (a) the petitioner shall be deemed to have waived a jury trial and no jury shall be called to determine whether the petitioner is a sexual sociopath and (b) the proceedings shall be confidential in nature and no publicity shall be permitted concerning the filing of the petition or the proceedings thereunder. The records of such proceeding shall be available to any attorney representing the petitioner but shall not be available to the public."

While the petitioner's commitment under section 29-2909, R. R. S. 1943, was voluntary in the sense that he initiated the proceedings, when it proceeded to the determination that he was a sexual sociopath, his confinement and release are subject to the other provisions

of the act. His only remedy is a determination thereafter that he is no longer a sexual sociopath.

Petitioner essentially is challenging the legality of the proceedings. The California court on a challenge to its sexual psychopath law, presenting almost the identical issue, said in People v. Hymes, 161 Cal. App. 2d 668, 327 P. 2d 219 (1958): "In the second place, it is to be remembered that appellant himself initiated the sexual psychopathy proceedings. Having invoked the beneficent provisions of the law, and having sought the hoped-for benefits of the observation, care and treatment thereby accorded him, appellant cannot be heard to question the constitutionality of the law. (Tracy v. MacIntyre, 29 Cal. App. 2d 145, 150 [84 P. 2d 526]; Foster v. Superior Court, 26 Cal. App. 2d 230, 234 [79 P. 2d 144]; Zeibak v. Nasser, 12 Cal. 2d 1, 18 [82 P. 2d 375].)"

In Zoimen v. Landsman, 192 Neb. 561, 223 N. W. 2d 49 (1974), we said: "A litigant who invokes the provisions of a statute may not challenge its validity. He may not seek the benefit of it and at the same time and in the same action question its constitutionality."

Petitioner argues that the court, by granting a hearing, assumed there was probable cause to believe that he was no longer a sexual sociopath. The hearing was initiated on the petitioner's motion. Defendant's commitment provided that it was subject to annual or other reviews. The finding that petitioner was a sexual sociopath continued until such time as evidence is adduced to prove otherwise. The hearing on petitioner's application started on October 10, 1975. It was continued to November 18 to permit petitioner to secure some psychiatric testimony. In the interim, he was examined by a psychiatrist but did not offer the testimony of that psychiatrist at the subsequent hearing. No testimony was adduced to prove petitioner was no longer a sexual sociopath.

Petitioner's attack was on the legality of the origi-

nal commitment procedures. Actually, the primary issue of the annual hearing, whether or not Wells is still a sexual sociopath, is not presented in this appeal. We determine the petitioner is not entitled to terminate his commitment until such time as it shall be determined that he is no longer a sexual sociopath.

Petitioner was allowed to present evidence concerning the validity of the 1953 rape conviction which he stipulated to in the commitment, and for which he served the sentence imposed. Wells argues there must be a conviction for a sexual offense in order for him to be classified as a sexual sociopath. The definition contained in section 29-2901, R. R. S. 1943, is as follows: "(2) sexual sociopath shall mean any person who has been convicted of a sexual offense and who, by the procedure established in sections 29-2901 to 29-2910, is determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others."

Wells' commitment was instituted under section 29-2909, R. R. S. 1943. This section provides, so far as material herein: "Any person *whether or not he is guilty of a sexual offense* who believes himself to be a sexual sociopath may initiate proceedings under sections 29-2901 to 29-2910 by filing a petition in the district court of any county alleging that he believes himself to be a sexual sociopath." (Italics supplied.)

Wells, at the time he initiated the proceedings under section 29-2909, R. R. S. 1943, was charged with two felony sexual offenses. The record indicates that after a conference between him, his retained attorney, and a deputy county attorney, his cases were disposed of by his voluntarily committing himself as a sexual sociopath.

Construing the two sections of the statute set out above in pari materia, it is apparent the intent of the statute is that a prior conviction of a sexual offense is not a condition precedent to a voluntary commitment.

There is no merit to the petitioner's contention herein.

There is a compelling reason to uphold the 1953 rape conviction, if it were an issue herein, without further argument. Defendant's retained counsel in open court stipulated to that conviction when attention was called to the definition of a sexual sociopath in section 29-2909, R. R. S. 1943. This section provides, so far as ma-voluntarily made, and relief from such stipulations after judgment is warranted only under exceptional circumstances. Martin v. Martin, 188 Neb. 393, 197 N.· W. 2d 388 (1972). No exceptional circumstances are present herein. See, also, State v. Feagin, 196 Neb. 261, 242 N. W. 2d 124 (1976), in which we stated: "The plea of guilty eliminated the necessity of proof of the prior convictions or that the defendant had been represented by counsel or had knowingly or intelligently waived his right to counsel at the time of those convictions. * * * A plea of guilty waives all defenses to the charge whether procedural, statutory, or constitutional." A voluntary commitment on the record herein is analogous to a plea of guilty, and the rule should be the same.

The final assignment we consider is that the District Court erred in not permitting petitioner to be personally present in court at the hearing and argument on his motion for new trial. The Nebraska rule has long been that a person convicted of a felony and represented by counsel cannot, as a matter of right, insist on being present in court either at the time of the filing, the argument, or the ruling upon his motion for a new trial. Davis v. State, 51 Neb. 301, 70 N. W. 984 (1897).

A more recent formulation of the answer to petitioner's assignment is found in Council v. Clemmer, 177 F. 2d 22, (D.C. Cir., 1949): "Appellant says he was not present when the motion for new trial was argued by his counsel, and that his absence was a violation of his constitutional right to be present. The argument upon

that motion was not a part of the trial; it was an effort to get another trial. It dealt with questions of law and alleged errors in the trial. There was no constitutional requirement that the defendant be present."

A review of the record convinces us that there is no merit in any of the petitioner's assignments. The judgment is affirmed.

AFFIRMED.